UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CORNELL MANLEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:16-CV-1442 NAB |
| | ) |
| MICHELE BUCKNER[1], | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Cornell Manley's Petition for Writ of Habeas Corpus. [Doc. 1.] Respondent filed a response to the Petition for Writ of Habeas Corpus. [Doc. 9.] Petitioner filed a traverse (reply). [Doc. 10.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 8.] For the reasons set forth below, Manley's Petition for Writ of Habeas Corpus will be denied.

**I.     Background**

The following evidence, in the light most favorable to the verdict, was presented at trial[2]: On the afternoon of October 3, 2009, Anthony Dodson picked up Manley in a maroon Toyota Avalon. Dodson and Manley stopped at a gas station, and Dodson went inside, where Trevon Sykes verbally confronted and flashed a gun at him. Dodson returned to the Toyota and Sykes climbed into the driver's seat of a green Pontiac Grand Prix, in which Craig Nichols and Brandon

---

[1] During the time this case was pending, a different person began serving as warden at the South Central Correctional Center where Petitioner is incarcerated. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Michele Buckner, the current warden, as the Respondent and remove Michael Bowersox's name.
[2] These facts are taken from the Missouri Court of Appeals' decision in Manley's direct appeal. [Resp't Ex. E]. A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e)(1).

Campbell were waiting. Sykes followed Manley and Dodson out of the gas station parking lot, and Nichols fired a gunshot at the Toyota.

Sykes, Nichols, and Campbell then picked up Sykes's girlfriend and drove to a Schnucks parking lot where they waited while the girlfriend shopped. From the parking lot, they saw Dodson and Manley drive by in the Toyota. At this point, Campbell, who was sitting in the driver's seat, drove the car out of the parking lot because he feared retaliation by Manley and Dodson.

Dodson pursued the Pontiac while Manley fired an AK-47 at it. The Pontiac crashed, and Sykes and Campbell climbed out of the driver's side window and fled on foot. Nichols, who was injured, slowly emerged from the car. Dodson made a U-Turn and drove the Toyota onto the sidewalk where Nichols was lying. As Nichols begged Manley not to kill him, Manley shot Nichols at least six times. An ambulance transported Nichols to a hospital, where doctors pronounced him dead.

On July 1, 2011, a jury found Manley guilty of first degree murder, two counts of first degree assault, and three counts of armed criminal action. The trial court sentenced Manley to life in prison without the possibility of parole for the murder charge, fifteen years for each first degree assault charge, and life in prison for the armed criminal action charges. Manley filed a direct appeal and a motion for post-conviction relief, which were denied by the Missouri Court of Appeals. On September 9, 2016, Manley timely filed this petition for writ of habeas corpus in this court.

## II. Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91

(2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 569 U.S. 413, 421 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 71-72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407-408). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 793 (citing *Williams*, 529 U.S. at 409). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evenstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III. Discussion

Manley presents four claims for habeas review. First, he asserts that the trial court abused its discretion by overruling objections to the prosecution's voir dire questioning. Second, he contends that the trial court failed to declare a mistrial and rushed the jury's verdict. Third, he asserts that he received ineffective assistance of trial counsel when his counsel failed to call alibi witnesses. Fourth, he asserts that he received ineffective assistance of trial counsel because his

4

counsel failed to object and request a mistrial when the trial court closed the courtroom during a witness's testimony.

### A. Trial Court Rulings

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The admissibility of evidence is a matter of state law. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "To meet this burden, a habeas petitioner must show that absent the alleged impropriety the verdict probably would have been different." *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007).

#### 1. Objections During Jury Selection

In the first issue for review, Manley contends that the trial court judge erred in overruling objections to the prosecutor's questions during *voir dire*. "No hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Skilling v. United States*, 561 U.S. 358, 386 (2010). "The conduct of *voir dire* is generally left to the trial court's sound discretion." *Nicklasson v. Roper*, 491 F.3d 830, 835 (8th Cir. 2007). "*Voir dire* plays a critical role in assuring criminal defendants that their Sixth Amendment right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge cannot fulfill the responsibility to remove prospective jurors who may be biased and defense counsel cannot intelligently exercise peremptory challenges." *Ramsey v. Bowersox*, 149 F.3d 749, 756 (8th Cir. 1998) (citing *United States v. Spaar*, 748 F.2d 1249, 1253 (8th Cir. 1984)). "[The] proper test for exclusion of a juror for cause is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Sweet v. Delo*, 125 F.3d 1144, 1156 (8th Cir. 1997) (citing *Wainwright*

*v. Witt*, 469 U.S. 412, 424 (1985)). Deference must be given to the trial judge who sees and hears the juror. *Wainwright*, 469 U.S. at 426. "[A]lthough there are no constitutional provisions directly addressing the use of hypothetical questions during voir dire, there may be circumstances where a party's manner of conducting voir dire renders a jury impartial and thereby triggers a Sixth Amendment violation." *Hobbs v. Lockhart*, 791 F.2d 125, 129 (8th Cir. 1986).

In this case, Manley brought an appeal based on two lines of questioning by the prosecutor in this case. The first line of questioning concerned whether the jury would require a motive to make a decision. The prosecutor made the following statement:

> And in those instructions, I don't anticipate that in any instruction given by the court that the court is going to require the state to prove motive, because that's not an element of the offense. And the reason I tell you that is – is I expect that you'll hear evidence in this case that gives you ideas and gives you information about what happened that day, but most people, you know, think about criminal cases, they want to hear all this intricate details about why something happened. Sometimes that information just isn't there. Sometimes that information on why something happened, why a crime happened, you may not get that information, but that doesn't mean that the state can't meet its burden of firmly convincing you. Does that make sense to everybody? Because unless there's an element of that offense that says this is why this happened the state doesn't have to prove that to you. Does that make sense to everybody? Hearing that, is there anybody here that's thinking, 'Listen, this is a murder case. It's a criminal case. I need to know the why. I need to know what the motive is. And if I don't know what the motive is, I can't make a decision. It's a serious case.' Is there anybody here who's thinking, 'I can't do that?' Anybody over here?

(Resp't Ex. S at 75-76.) Defense counsel objected to the question as "a commitment on the facts." The trial court overruled defense counsel's objection.

The second line of questioning at issue concerned the types of evidence used during a trial. A summary of the prosecutor's statements and defense counsel's objection are listed below.

**Prosecutor**: One type of evidence isn't necessarily under the law better than another type. Does that make sense to everybody? Now a lot of you folks might be thinking, 'Well, it's a criminal case. I watch Court TV. I see things that come on TV a lot and I'm expecting a certain type of evidence.' You might have that in the back of your mind. You might be thinking, 'I'm expecting some type of scientific evidence, DNA or fingerprints or something like that.' Is there anybody here who, just sitting here right now hearing the charges in this case, is thinking, 'I'm going to require the state to put on fingerprints or DNA before I can deliberate and reach a guilty verdict?' Anybody over here going to require scientific testimony of some type, whether it's DNA or fingerprints? Anybody over here?

…

**Venireperson**: I would need to see physical evidence.

**Prosecutor**: And when you're referring to physical evidence, do you have a specific type of evidence that you're –

**Venireperson**: Just I would have a really hard time with that. I would struggle with that, with just testimony or circumstantial. I'm married to a scientist, so –

**Prosecutor**: So for you – and you said when I mentioned, you were talking about you would need to see something like DNA or fingerprints?

**Venireperson**: (Nodding Head)

**Prosecutor**: Have you answer out loud, I'm sorry.

**Venireperson**: Yes. I'm sorry, yes.

**Prosecutor**: And so, without having heard anything, and there's no wrong answer here, in your mind in a criminal case and what you said, "I'm married to a scientist, I need to see something more. Testimony is not enough and, you know, I need to see something that's scientific, that's going to put me able to participate and return a guilty verdict.

**Venireperson**: Yes.

**Defense Counsel**: Objection depending on the facts.

7

**The Court**: Overruled.

(Resp't Ex. S at 78-81.)

After a careful review of the state court record, the Court finds that relief should not be granted on this claim. Both questions address whether the jurors would follow the court's instructions. The question regarding scientific evidence appears to ascertain whether the jurors could convict Manley based on various types of evidence. *See Hobbs*, 791 F.2d at 129. The jurors were never asked to commit to a particular position regarding any of the evidence. It is extremely important for both sides to determine if a juror will follow the court's instructions. For example, if a juror required additional proof beyond the evidence presented at trial, like DNA evidence, that juror would be holding the state to a higher burden of proof, which goes against the court's instructions. Likewise, if the juror wanted to know details of a motive to decide, but motive is not an element of the crime, the attorneys need to know that. Therefore, the Court will deny relief on this claim.

### 2. Rushed Verdict

In his second claim for review, Manley contends that the trial court judge coerced the jury to rush the verdict. All criminal defendants being tried by a jury are entitled to the uncoerced verdict of that body. *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). "To determine whether a trial court improperly coerced the jury, a court considers the supplemental charge given by the trial court in its context and under all the circumstances." *Jones v. Payne*, No. 4:16-CV-294 RLW, 2019 WL 1081677 at *4 (E.D. Mo. March 7, 2019) (citing *Lowenfield*, 484 U.S. at 237). "[C]ase law indicates—consistent with Supreme Court precedent—that a state court's finding that jury coercion did not occur is the type of finding of fact to which the § 2254(d) presumption applies." *Stallings v. Delo*, 117 F.3d 378, 381 (8th Cir. 1997).

In this case, the trial court conducted a four-day jury trial. The state presented the testimony of Dodson, Sykes, Sykes's former counsel, a forensic medical examiner, an evidence technician, police officers involved in the investigation, and an eyewitness to the October 3, 2009 car chase. The defense presented Campbell and re-called two state witnesses to the stand. Jury deliberations began on the afternoon of June 30, 2011 and the jurors deliberated for an hour and thirty minutes before requesting to return the next day to continue deliberations. On July 1, 2011, the jury began deliberations at 9:05 a.m. At 12:30 p.m., the jurors requested to re-watch a video, which the court granted. At 2:20 p.m., the jurors sent the judge a note stating that 10 jurors had a decision, 2 jurors could not make a decision, and they wanted guidance from the court. The trial court judge sent a note to the jury that said, "You will be guided by the evidence as you remember it. Continue in your deliberations." The jury resumed deliberations at 2:40 p.m. and returned guilty verdicts on all counts at 5:40 p.m.

The Missouri Court of Appeals held that Manley had not alleged or demonstrated that the trial court had stated or implied that the jury would not be released until it returned a verdict, that it must reach a verdict by a certain time, or that it was required to reach a verdict, all acts that would be considered coercive. The state court of appeals found that the trial court's supplemental instruction did not require the jury to reach a verdict but merely to continue deliberations. It also held that the circumstances surrounding the jury's verdict do not suggest that the verdict was coerced.

Based on a review of the record and the state court decision below, the Court finds that the state court's legal and factual findings of no coercion are entitled to deference. At the time the judge instructed the jury to continue deliberations, the jury had already been out for 4 hours and 55 minutes. The jurors did not state they were deadlocked, they just requested guidance from the

9

court. The jurors then deliberated an additional 3 hours. The totality of circumstances does not demonstrate any coercion from the trial court. Therefore, habeas relief will be denied on this claim.

### B. Ineffective Assistance of Counsel

Manley's next two claims allege ineffective assistance of counsel. The Sixth Amendment guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. U.S. Const. amend. VI. The Sixth Amendment's right to counsel has been interpreted to mean "that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id*. To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88. Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Strickland*, 466 U.S. at 698.

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Miscues and omissions are inevitable in any case and there is no such thing as a perfect trial." *Medearis v. U.S.*, 469 F.Supp.2d 779, 785 (D.S.D. 2006).

To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

"In the interests of finality and federalism, federal habeas courts are constrained by [AEDPA] to exercise only a 'limited and deferential review of underlying state court decisions.'" *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on

the outcome of the trial, focusing on whether it is reasonably likely that the result would have been different absent the errors." *Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)). "To satisfy Strickland, the likelihood of a different result must be substantial not just conceivable." *Id.* Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id.* Therefore, "[s]o long as the state court's decision was not "contrary to" clearly established federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

### 1. Failure to Call Alibi Witnesses

In his first ineffectiveness of counsel claim, Manley asserts that he was prejudiced by his trial counsel's failure to call alibi witnesses. Trial counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight." *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990). An attorney's decision not to interview or call a particular witness must be viewed from the perspective of counsel at the time the decision was made. *United States v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001). "In conducting this analysis, [the Court considers]: (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses

12

called; and (3) the strength of the evidence actually presented by the prosecution." *Id.* There is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming. *Armstrong v. Kemna*, 590 F.3d 592, 605 (8th Cir. 2010).

In this case, Manley asserts that he wanted his attorney, Robert Taaffe to call his brother Clinton Rivers, his brother's fiancée Kenyetta Douglass, and his child's mother Whitney Thomas as alibi witnesses during his trial. Mr. Taaffe met with the witnesses, filed a notice of alibi, and subpoenaed them for trial, but decided not to call them. Mr. Taaffe testified at a post-conviction evidentiary hearing that he did not call the witnesses because he thought the trial was going well and there was no need to call them. Mr. Taaffe states that Manley spoke to the police after the shooting, but Manley did not mention that he was with the potential witnesses. Mr. Taaffe believed that if the witnesses testified then the jury would draw a negative inference from the fact he did not mention an alibi when questioned by the police. The post-conviction motion court denied Manley's motion regarding this claim finding that counsel's decision not to call the alibi witnesses was reasonable trial strategy. The Missouri Court of Appeals held that this ruling was not clearly erroneous.

Based on the foregoing, the Court finds that Manley has not established ineffective assistance of counsel. "Once an attorney interviews a witness, it becomes largely a matter of legal judgment as to whether the witness should be called to testify." *Johnson v. Lockhart*, 921 F.2d 796, 799 (8th Cir. 1990). While different lawyers can reasonably arrive at different conclusions based on the same interview, the decision not to call Manley's alibi witnesses was a matter of legal strategy. *Johnson*, 921 F.2d at 799. The Court should not second guess a lawyer's trial strategy in evaluating claims of ineffective assistance of counsel. *Id.* In this case, it was reasonable for Manley's attorney to believe that calling the alibi witnesses would then require Manley to testify

and open the door to questions regarding why he did not tell the police about the alibi. It was also reasonable to weigh whether an alibi supplied by family and friends would be considered credible by the jury. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." *James v. State of Iowa*, 100 F.3d 586, 590 (8th Cir. 1996) (citing *Stacey v. Solem,* 801 F.2d 1048, 1051 (8th Cir.1986)). "After all, the testimony of alibi witnesses, especially friends and relatives of the defendant, does not assure an acquittal and is sometimes counterproductive." *Freeman v. Graves*, 317 F.3d 898, 901 (8th Cir. 2003). The Court finds that trial counsel's decision regarding the alibi testimony was not unreasonable and Manley cannot show that he was prejudiced by the failure to call these witnesses. Habeas relief is denied for this claim.

## 2. Failure to Object to Closing of Courtroom

Finally, Manley asserts that trial counsel failed to object and request a mistrial when the trial court judge closed the courtroom during his co-defendant's testimony and the closure of the courtroom denied him the right to a public trial guaranteed by the Sixth Amendment. The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; …." "The central aim of a criminal proceeding must be to try the accused fairly …." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Id.* "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46.

"While the right to a public trial is not absolute, the overriding presumption of openness may not be lightly overcome." *Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013). "The right must give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting the disclosure of sensitive information." *United States v. Thompson*, 713 F.3d 388, 394 (8th Cir. 2013) (citing *Waller*, 467 U.S. at 45). "Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Press-Enterprise Co., v. Superior Court of California, Riverside County*, 464 U.S. 501, 509 (1984). "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 510. "The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* In a complete closure of a trial

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller*, 467 U.S. at 48.

Just before Manley's co-defendant Anthony Dodson testified, the trial court judge announced to the attorneys at sidebar that she was going to clear the courtroom on both sides. (Resp't Ex. S at 546-47.) The trial court judge stated the following:

> I'm going to clear the courtroom, that's on both sides so it doesn't look like I'm picking on one side. But people are filing in and I have concerns about the witness and his testimony, so I'm going to have everybody leave and then we'll bring Mr. Dodson in and put him there, and then we'll bring the jury down and get started.

15

Mr. Taaffe objected stating:

> For the record, Judge, I'm going to make a record on this issue. … I want to note throughout the course of the trial there have been more than the normal deputies that have been in the courtroom. Throughout the course of the trial there's been two police officers in the courtroom. I'm concerned that the picture that we're painting for the jury is that my client's family and his relatives and his friends are gangbanging thugs. That's the implicitness we're giving the jury by my opinion, the excess security and everything like that. There are females out there. There are friends of the family. I'm glad the court is going to clear the entire courtroom, but my concern is even clearing the courtroom is going to give the jury the impression that my guy's family and friends can't be trusted and he's a member of a gang. So on that basis I am going to object.

(Resp't Ex. S at 547.) The trial court judge then reiterated her order to clear the courtroom and then announced the clearing of the entire courtroom for the duration of Dodson's testimony. Dodson then testified with only court staff, counsel, Manley, and the jury present in the courtroom. After his testimony concluded, the judge allowed the public to return to the courtroom and observe the remainder of the trial.

In this case, Mr. Taaffe testified at the post-conviction evidentiary hearing that he would not have requested a mistrial because he thought things were going in Manley's direction. The trial court judge also presided over the post-conviction proceedings as well. In her order denying Manley's post-conviction motion, the trial court judge indicated that she had real security concerns during Mr. Dodson's testimony, that extra security was necessary, and the court had specific concerns about witness threats and intimidation regarding Mr. Dodson's testimony. She acknowledged that the "record made at movant's trial was not as complete as might be desired." She found that counsel was not ineffective for not seeking a mistrial. The Missouri Court of

16

Appeals also held that it was reasonable trial strategy for defense counsel not to request a mistrial, because the closure was proper, and he believed the case was going well.

Based on the foregoing, the Court finds that Manley has not established ineffective assistance of counsel regarding his counsel's failure to request a mistrial due to the temporary closure of the courtroom. Circumstances may exist where a judge could conclude that threats of improper communications or safety concerns are concrete enough to warrant closing a proceeding. *Presley v. Georgia*, 558 U.S. 209, 215 (2010). Numerous courts have upheld closure to protect testifying witnesses. *United States v. Addison*, 708 F.3d 1181, 1187 (10th Cir. 2013) (listing cases). Although counsel objected, it was not unreasonable for him not to request a mistrial, considering he believed the trial was going well and that the trial court judge cleared the entire courtroom and did not exclude certain people. Therefore, the Court will deny habeas relief on this claim.

## IV. Conclusion

Based on the foregoing, the Court finds that Manley's request for relief pursuant to 28 U.S.C. § 2254 is denied. The Court finds all of the state court's findings and conclusions regarding Manley's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Nor did the state court's findings result in a decision that was based on an unreasonable determination in light of the evidence presented in the state court proceedings. Because Manley has made no showing of a denial of a constitutional right, a certificate of appealability will not be issued in this matter. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. [Doc 1.]

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Michele Buckner in the place of Michael Bowersox as the Respondent in this action, pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of June, 2019.